**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------------X

**BETH KRAMER, on behalf of herself and all other persons similarly situated,**

**Plaintiff**

**CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL**
**DOCKET No.**

**-against-**

**GRAYSON BENTLEY, INC., d/b/a BUTTERCLOTH,**

**Defendant**

---------------------------------------------------------------------X

Plaintiff, BETH KRAMER, ("Plaintiff" or "Ms. Kramer"), on behalf of herself and all other persons similarly situated (collectively, "Plaintiffs"), by and through their undersigned counsel, Robert L. Schonfeld, Esq. of Joseph & Norinsberg, LLC, as and for their putative class action complaint upon Defendant, GRAYSON BENTLEY, INC. d/b/a BUTTERCLOTH ("BUTTERCLOTH" or "Defendant"), hereby alleges as follows:

## INTRODUCTION

1. On September 25, 2018, the U.S. Department of Justice reaffirmed its longstanding position that websites operated by places of public accommodation must be accessible to individuals with disabilities. In a letter to Representative Ted Budd, Assistant Attorney General Stephen E. Boyd stated: "The Department first articulated its interpretation that the ADA applies to public accommodations' websites over 20 years ago." This interpretation aligns with Title III's mandate that the goods, services, and privileges offered by such entities are equally accessible to all, including those with disabilities. (See DOJ Letter to Congress.)

2. Plaintiff, BETH KRAMER, is a legally blind resident of New York County, New York. She has been diagnosed with advanced Macular Degeneration complicated by Retinal Detachment, resulting in severe and permanent visual impairment, as documented by Dr. Kyle Kovacs, MD, St. Giles Associate Professor of Clinical Ophthalmology at Weill Cornell Medicine. (See Exhibit A.) As of her most recent examination on April 12, 2025, Ms. Kramer's best-corrected visual acuity was measured at 20/320 in her right eye and 20/280 in her left eye—far below the 20/200 threshold for legal blindness under federal and New York State standards. Her functional visual field is constricted to approximately 15–18 degrees, with severe central field loss, dense scotomas, marked distortion (metamorphopsia), and significant reduction in contrast sensitivity, all of which affect her ability to read standard print and navigate digital interfaces.

3. Ms. Kramer is a proficient user of screen-reading software, including Job Access With Speech ("JAWS") and/or NonVisual Desktop Access ("NVDA"), which she relies on daily to navigate digital environments independently. Her reliance on keyboard-based navigation and screen-reading protocols enables her to engage with online retail platforms, product pages, and shopping carts without sighted assistance. Screen-reading software is indispensable to her autonomy and digital accessibility. Due to the permanent and progressive nature of her condition—which is not correctable with standard lenses or routine surgical intervention—Ms. Kramer will require assistive technology and digital accessibility accommodations for the remainder of her life.

4. This action arises from Defendant GRAYSON BENTLEY, INC. d/b/a BUTTERCLOTH's failure to design, maintain, and operate its website, www.buttercloth.com (the "Website"), in a manner accessible to blind and visually

impaired individuals. The Website functions as an interactive retail platform and digital gateway for Defendant's men's apparel business, which offers premium shirts, sweaters, outerwear, and related accessories to consumers across the United States, including New York. Defendant's failure to ensure equal access to these services violates Plaintiff's rights under Title III of the Americans with Disabilities Act ("ADA").

5. On multiple occasions in February and March 2026, Ms. Kramer visited www.buttercloth.com using screen-reading software with the intent to shop for premium men's shirts as gifts for her adult son and nephew, who she regularly purchases clothing gifts for on birthdays, holidays, and other occasions. Specifically, Ms. Kramer sought to purchase the following products for her son and nephew, respectively: (a) the Buttercloth Dynasty Long Sleeve Dress Shirt—a signature product that Buttercloth prominently features in its collection—and (b) the Buttercloth Paradigm Icy Cotton® Short Sleeve Shirt. Ms. Kramer was drawn to Buttercloth's Website after reading about its widely publicized appearance on the television program Shark Tank and its reputation for producing extraordinarily soft, premium, comfort-focused men's dress shirts in a wide variety of styles. Because her son works in a professional office environment and frequently requests dress shirts as gifts, and because her nephew prefers casual short-sleeve options, these two products appeared ideal choices for Ms. Kramer's gift-giving purposes.

6. As a legally blind consumer, Ms. Kramer depends on accessible online shopping to avoid the logistical and emotional burdens of in-person retail environments, which require her to seek assistance from strangers—an experience she finds uncomfortable, intrusive, and incompatible with her desire for independence. During her visits to www.buttercloth.com, on February 11, and February 15, 2026 and on March 14,

2026, respectively, Ms. Kramer attempted to browse product offerings, review product descriptions and sizing information, select product options (including size and color), and complete purchases. Because the Website lacked proper alternative text for product images, contained unlabeled interactive elements and buttons, featured inaccessible dropdown menus for size and color selection, and failed to provide screen-reader-compatible navigation throughout the checkout process, Ms. Kramer was unable to meaningfully access the product information, select available options, or add the items to her cart—preventing her from completing the intended purchases.

7. These barriers are not isolated defects. Two separate SortSite automated audits conducted by Plaintiff's counsel revealed a combined total of 13 WCAG accessibility errors and 6 broken link issues across pages Ms. Kramer attempted to use. The SortSite Accessibility Validation Report identifies that images across the Website "should not use an image file name as alt text" and that "animated images over 3 seconds long that can't be paused or stopped" prevent meaningful access. The SortSite report further confirms that "links use general text like 'Click Here'" which provides no context to screen-reader users and that numerous non-accessible iframes, missing labels, and broken ARIA references permeate the Website's pages. The SortSite Broken Link Report separately documents that at least 6 categories of pages on www.buttercloth.com contain broken or non-functional links, further compounding Ms. Kramer's inability to navigate the site. These violations contravene the Web Content Accessibility Guidelines ("WCAG") 2.1 Level A and AA standards, which are widely recognized as the benchmark for digital accessibility under the ADA. Exhibit B

8. Defendant GRAYSON BENTLEY, INC. is a California corporation with its

principal place of business in Carson, California. It owns and operates www.buttercloth.com, a nationwide e-commerce platform offering premium men's shirts, sweaters, outerwear, and accessories to consumers across the United States, including New York. The Website is Defendant's primary and, upon information and belief, exclusive sales channel, as Buttercloth operates as a direct-to- consumer internet-first brand. Defendant markets its products and directs its sales activities to New York consumers through the Website, and the discriminatory conduct giving rise to this action occurred, in material part, within this District.

9. Ms. Kramer specifically sought out Buttercloth's Website due to its widely recognized reputation for producing premium, comfort-focused men's dress and casual shirts—and her specific desire to purchase gifts for family members. As a blind consumer, she depends on accessible digital interfaces to make informed purchasing decisions, review product details, and complete transactions independently. Defendant's failure to provide a WCAG-compliant website denied her equal access to the same services offered to sighted users. Despite Buttercloth's prominence—having secured investment on Shark Tank and generating millions in annual revenue— Defendant has failed to implement basic accessibility features, reflecting a pattern of indifference to the rights of disabled individuals.

10. Ms. Kramer remains highly motivated to return to www.buttercloth.com and complete her intended purchases once the Website is made accessible. Her intent to return is concrete, particularized, and ongoing: she still intends to purchase the Dynasty Long Sleeve Dress Shirt and the Paradigm Icy Cotton® Short Sleeve Shirt for her son and nephew, respectively. These products are not reliably available to her through third-party

platforms with equivalent descriptions, sizing tools, and ordering features, and she requires full access to Defendant's product pages, size-selection menus, cart, and checkout to complete the intended transactions. Without remediation of the barriers described herein, Ms. Kramer will continue to be excluded from accessing Defendant's goods and services on equal terms with sighted consumers.

11. Defendant's ongoing failure to provide accessible digital services constitutes a denial of full and equal access under Title III of the ADA. Plaintiff respectfully requests that this Court issue a permanent injunction compelling Defendant to bring its Website into compliance with federal accessibility standards, together with compensatory damages, civil penalties, and other relief as set forth below.

**JURISDICTION AND VENUE**

12. This Court has subject-matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 42 U.S.C. § 12182 because Plaintiff's claims arise under Title III of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12182, *et seq.*

13. Supplemental jurisdiction over Plaintiff's state and local claims is proper under 28 U.S.C. § 1367. These claims arise under the New York State Human Rights Law, Article 15 (Executive Law § 290 et seq.) ("NYSHRL"); the New York City Human Rights Law, N.Y.C. Admin. Code § 8-101 et seq. ("NYCHRL"); and the New York State Civil Rights Law, Article 4, §§ 40-c and 40-d ("NYCRL").

14. Venue is proper in the Southern District of New York pursuant to 28 U.S.C. §§ 1391(b) and (c). Defendant GRAYSON BENTLEY, INC. d/b/a BUTTERCLOTH conducts substantial and continuous business in this District through its interactive Website, www.buttercloth.com. Plaintiff accessed and attempted to use this Website from

her residence in New York County, and the discriminatory conduct giving rise to this action occurred within the jurisdiction of this Court.

15. Defendant is a California corporation that actively engages in commercial transactions with New York residents through its Website. These transactions include product selection, customization, checkout, and customer support. Defendant's digital infrastructure knowingly transmits data and files into New York, establishing purposeful availment under federal precedent. See *Reed v. 1-800-Flowers.com, Inc.,* 327 F. Supp. 3d 539 (E.D.N.Y. 2018); *Andrews v. Blick Art Materials, LLC,* 286 F. Supp. 3d 365 (E.D.N.Y. 2017); *Ford Motor Co. v. Mont. Eighth Judicial Dist. Court,* 592 U.S. ___ (2021); *South Dakota v. Wayfair, Inc.*, 585 U.S. ___ (2018); *Romero v. 88 Acres Foods, Inc.*, 2022 U.S. Dist. LEXIS 9040 (S.D.N.Y. Jan. 18, 2022); *Sanchez v. NutCo, Inc.,* 2022 U.S. Dist. LEXIS 51247 (S.D.N.Y. Mar. 22, 2022).

16. Accordingly, jurisdiction and venue are properly established in this District. Courts have consistently held that accessibility barriers encountered by users within the forum state provide a sufficient basis for asserting personal jurisdiction over out-of-state website operators.

## NATURE OF ACTION

17. This action arises under Title III of the Americans with Disabilities Act, 42 U.S.C. § 12181 et seq., challenging Defendant's operation of a public-facing website that denies blind and visually impaired individuals full and equal access. Plaintiff, a legally blind resident of this District, attempted to access Defendant's Website using screen-reading software but encountered multiple access barriers that prevented meaningful engagement with its services. Defendant's failure to design and maintain its Website in

accordance with the Web Content Accessibility Guidelines (WCAG 2.1) constitutes unlawful discrimination and violates federal accessibility standards.

18. The Internet has become a vital source of information and a primary tool for conducting everyday activities such as shopping, learning, banking, researching, and communicating—for sighted, blind, and visually impaired individuals alike.

19. In today's digital environment, blind and visually impaired individuals access websites using keyboards in conjunction with screen access software that vocalizes visual content or displays it on a refreshable Braille device. This technology, known as screen-reading software, is currently the only method by which blind or visually impaired persons may independently access the Internet. Unless websites are properly coded to interface with screen-reading software, blind and visually impaired users are unable to fully access the information, products, and services offered online.

20. Users of Windows-enabled computers have access to several screen-reading programs, including Job Access With Speech ("JAWS"), which is commercially available, and NonVisual Desktop Access ("NVDA"), which is open-source. These tools are indispensable for blind users and represent the only means by which they can independently navigate the Internet.

21. Plaintiff, BETH KRAMER, is a blind, visually impaired individual and a member of a protected class under the ADA, 42 U.S.C. § 12102(1)-(2), its implementing regulations at 28 C.F.R. §§ 36.101 et seq., and the NYCHRL. To access the Internet, Plaintiff relies on screen-reading software such as JAWS and/or NVDA for Windows.

22. For screen-reading software to function, website content must be capable of being rendered into text. If the underlying code fails to support this conversion, blind users

are unable to access the same content available to sighted users. Screen-reading software "translates the visual Internet into an auditory equivalent. At a rapid pace, the software reads the content of a webpage to the user." *Andrews v. Blick Art Materials, LLC,* 286 F. Supp. 3d 365, 375 (E.D.N.Y. 2017). As Judge Weinstein explained: "The screen reading software uses auditory cues to allow a visually impaired user to effectively use websites. For example, when using the visual internet, a seeing user learns that a link may be 'clicked,' which will bring her to another webpage, through visual cues, such as a change in the color of the text... The screen reading software uses auditory—rather than visual—cues to relay this same information... Through a series of auditory cues read aloud by the screen reader, the visually impaired user can navigate a website by listening and responding with her keyboard." See also American Federation for the Blind, Screen Readers, AFB Technology Guide, estimating that 26 million American adults report sight deficiency.

23. The World Wide Web Consortium ("W3C") has published the Web Content Accessibility Guidelines ("WCAG") 2.0 and 2.1, which establish internationally recognized standards for digital accessibility. These guidelines are widely adopted by private entities and government agencies, including the U.S. Department of Justice, and have been recognized by courts as the appropriate benchmark for ADA compliance.

24. Non-compliant websites pose recurring barriers to blind and visually-impaired users. Common violations include, but are not limited to:

a. Missing text equivalents for non-text elements (e.g., product images without alternative text);

b. Unlabeled frames and navigation regions;

c. Scripts without accessible alternatives;

d. Inaccessible forms and input fields (e.g., size and color selection dropdowns);

e. Content conveyed solely through visual presentation;

f. Inability to resize text without loss of functionality;

g. Time limits that cannot be adjusted or disabled;

h. Missing or ambiguous page titles;

i. Links lacking descriptive context (e.g., generic "Click Here" text);

j. Keyboard focus indicators that are not discernible;

k. Undetectable default language settings;

l. Components that trigger unexpected context changes;

m. Settings that alter context without user notice;

n. Input fields lacking labels or instructions, including inaccessible CAPTCHA prompts;

o. Improperly nested markup, duplicate attributes, and non-unique IDs;

p. Inaccessible Portable Document Format (PDF) files;

q. User interface elements whose roles and states cannot be programmatically determined; and/or

r. Animated images that cannot be paused or stopped, preventing screen readers from processing the page.

## STATEMENT OF FACTS

25. Plaintiff BETH KRAMER is a legally blind consumer residing in New York County, New York. She has been clinically evaluated and found to have advanced Macular Degeneration complicated by Retinal Detachment, resulting in severe and permanent visual impairment. Ms. Kramer's diagnosis and legal blindness status are documented by Dr. Kyle Kovacs, MD, St. Giles Associate Professor of Clinical Ophthalmology at Weill Cornell Medicine, 1305 York Avenue, 11th Floor, New York, NY 10021. (See Exhibit A.)

26. As of her most recent examination on April 12, 2025, Ms. Kramer's best-corrected visual acuity measured 20/320 in her right eye (OD) and 20/280 in her left eye (OS)—both far below the 20/200 threshold establishing legal blindness under federal and New York State law. Her functional visual field is constricted to approximately 15–18 degrees, with severe central field loss, dense scotomas (blind spots), marked distortion (metamorphopsia), impaired depth perception, and significant reduction in contrast sensitivity. These conditions directly affect her reading of standard print and her navigation of digital interfaces, including websites.

27. Dr. Kovacs has confirmed that Ms. Kramer's condition is permanent and progressive. Macular Degeneration complicated by Retinal Detachment is not correctable with standard lenses or routine surgical intervention, and the likelihood of arresting or reversing her condition is extremely limited. Ms. Kramer will require ongoing low-vision support, assistive technology, and digital accessibility accommodations throughout her life.

28. Ms. Kramer relies on screen-reading software—including JAWS and/or NVDA—to navigate the Internet and complete online transactions independently. She uses keyboard-based navigation exclusively to browse, select items, and complete purchases on retail websites. Without a properly coded, screen-reader-compatible website, Ms. Kramer cannot independently access online shopping services on the same terms as sighted consumers.

29. On February 11, 2026, and February 15, 2026, Ms. Kramer visited www.buttercloth.com using the NVDA screen-reading software with the intent to purchase premium men's shirts as gifts for her adult son and nephew. Specifically, Ms. Kramer sought to purchase: (a) the Buttercloth Dynasty Long Sleeve Dress Shirt for her son, who works in a professional office environment and who Ms. Kramer has regularly purchased dress shirts for over the years; and (b) the Buttercloth Paradigm Icy Cotton® Short Sleeve Shirt for her nephew, who prefers casual, high-quality short-sleeve shirts. Ms. Kramer had read about Buttercloth's appearance on the television program Shark Tank, where the brand was praised for producing extraordinarily soft, premium shirts, and determined that these products would be ideal gifts for her family members.

30. While navigating the Website, Ms. Kramer attempted to access the product pages for the Dynasty Long Sleeve Dress Shirt and the Paradigm Icy Cotton® Short Sleeve Shirt, review product descriptions and materials information, select sizes and colors for each item, add items to her shopping cart, and proceed through the checkout process. At each step, she encountered disabling access barriers that prevented her from completing these tasks independently.

31. Specifically, when Ms. Kramer's screen-reading software attempted to read

product images on the Dynasty and Paradigm product pages, it encountered images lacking meaningful alternative text—either announcing only a file name such as "dynasty-black.jpg" or providing no text equivalent whatsoever—leaving Ms. Kramer without any description of the product's appearance, color options, or styling details. This directly deprived her of the ability to make an informed purchasing decision.

32. When Ms. Kramer attempted to select a size for the Dynasty Long Sleeve Dress Shirt using the size-selection dropdown, her screen reader could not identify or announce the available options because the interactive element lacked a proper accessible name and ARIA label. As a result, she was unable to determine which sizes were available or select her son's size.

33. When Ms. Kramer attempted to navigate the Website's checkout process and cart functions, she encountered unlabeled buttons and inaccessible interactive controls. Her screen reader announced only generic or empty labels for critical buttons—such as "Add to Cart" and "Checkout"—and in some instances announced only silence when tabbing to these controls, leaving her unable to initiate a purchase or proceed further in the transaction.

34. When Ms. Kramer attempted to use the Website's navigation menus to locate additional products—including sweaters and the Buttercloth Signature 6-Way Knit® shirts that she had also considered purchasing as gifts—she encountered links using generic descriptors that provided no context to her screen reader, such as "Click Here" or icon-only links, making it impossible to predict where a given link would take her or to efficiently browse product categories.

35. The SortSite Accessibility Validation Report generated on June 10, 2026, for

www.buttercloth.com confirms that these barriers are not isolated or random, but systemic and pervasive. The SortSite report documents, among other violations:

a. Images using file names as alternative text, in violation of WCAG 2.1 Success Criterion 1.1.1 (Non-text Content, Level A);

b. Animated images over 3 seconds long that cannot be paused or stopped, in violation of WCAG 2.1 Success Criterion 2.2.2 (Pause, Stop, Hide, Level A);

c. Links using general text such as "Click Here" that provide no context for screen- reader users, in violation of WCAG 2.1 Success Criterion 2.4.4 (Link Purpose, Level A);

d. Non-accessible iframes lacking titles, in violation of WCAG 2.1 Success Criterion 4.1.2 (Name, Role, Value, Level A);

e. Form elements lacking accessible labels, in violation of WCAG 2.1 Success Criterion 1.3.1 (Info and Relationships, Level A) and Success Criterion 3.3.2 (Labels or Instructions, Level A);

f. Broken ARIA references and invalid ARIA attributes, in violation of WCAG 2.1 Success Criterion 4.1.2 (Name, Role, Value, Level A); and

g. Pages with level A issues described by the SortSite report as "unusable for some people," with multiple pages across the Website affected.

36. In addition, the SortSite Broken Link Report generated for www.buttercloth.com separately documents a pattern of broken and non-functional links throughout the Website, including broken links to key pages within product category

collections—including the collections pages Ms. Kramer attempted to access. These broken links further compounded Ms. Kramer's inability to navigate the Website and locate the products she intended to purchase.

37. Together, the SortSite reports confirm that the barriers Ms. Kramer encountered were not temporary, isolated glitches, but part of a site-wide pattern of non-compliance with WCAG 2.1 Level A and AA standards. The barriers are documented across numerous pages, including the product pages and navigation elements that Ms. Kramer attempted to use during her visits, including for the final time on March 14, 2026 when :Plaintiff returned to the website but met with the same and other barriers thereupon.

38. As a result of the foregoing accessibility barriers, Ms. Kramer was denied full and equal access to Defendant's Website and was unable to independently complete the purchases she had specifically intended to make. She left the Website without completing her transactions and without any accessible means of obtaining equivalent assistance.

39. Ms. Kramer is highly motivated to return to www.buttercloth.com and complete her intended purchases once the Website is made accessible. Her intent to return is concrete, ongoing, and not speculative. She still intends to purchase the Dynasty Long Sleeve Dress Shirt for her son and the Paradigm Icy Cotton® Short Sleeve Shirt for her nephew as gifts. As a legally blind consumer who relies exclusively on screen-reading software to navigate online retail platforms, Ms. Kramer cannot complete these purchases on terms equal to those available to sighted consumers unless and until Defendant remediates the barriers identified herein. The barriers she encountered are ongoing, and absent remediation, she faces a real and immediate threat of future harm upon each return

visit to the Website.

40. Ms. Kramer has a genuine, ongoing desire to shop on www.buttercloth.com. Buttercloth is a well-known brand for premium men's shirts, and the Website is Defendant's primary and, upon information and belief, exclusive retail channel. The specific products Ms. Kramer intends to purchase—the Dynasty Long Sleeve Dress Shirt and the Paradigm Icy Cotton® Short Sleeve Shirt—are not available through accessible third-party retail platforms with equivalent product descriptions, sizing tools, and customer service features. Ms. Kramer cannot obtain the full benefit of Defendant's product offerings, warranties, promotional pricing, and account features through any alternative channel.

## CLASS ACTION ALLEGATIONS

41. Plaintiff BETH KRAMER brings this action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of herself and all other similarly situated individuals. The proposed Class is defined as follows:

> All legally blind individuals in the United States who have attempted to access www.buttercloth.com and were denied full and equal access due to the Website's failure to comply with WCAG 2.1 Level A and AA accessibility standards (the "Class"). The proposed New York Subclass is defined as follows:
>
> All legally blind individuals domiciled in the State of New York who have attempted to access www.buttercloth.com and were denied full and equal access due to the Website's failure to comply with WCAG 2.1 Level A and AA accessibility standards (the "New York Subclass").

The proposed New York City Subclass is defined as follows:

All legally blind individuals domiciled in New York City who have attempted to access www.buttercloth.com and were denied full and equal access due to the Website's failure to comply with WCAG 2.1 Level A and AA accessibility standards (the "New York City Subclass").

42. **Numerosity.** The Class is so numerous that joinder of all members is impracticable. According to the American Federation for the Blind, approximately 7.6 million Americans experience vision difficulty. More than one million Americans are legally blind. Defendant's Website is available to, and is visited by, consumers across the United States. Accordingly, the Class is sufficiently numerous that individual joinder is impracticable.

43. **Commonality.** Common questions of law and fact exist as to all members of the Class and predominate over questions affecting only individual Class members. Common legal and factual questions include:

a. Whether Defendant's Website, www.buttercloth.com, fails to comply with WCAG 2.1 Level A and AA standards;

b. Whether Defendant's Website constitutes a place of public accommodation under Title III of the ADA;

c. Whether Defendant has failed to take steps necessary to ensure that blind individuals are not denied access to, or excluded from, the goods and services offered through its Website;

d. Whether Defendant's conduct violates Title III of the ADA, 42 U.S.C. § 12182 et seq.;

e. Whether Defendant's conduct violates the NYSHRL, NYCHRL, and NYCRL; and

f. The appropriate relief to remedy Defendant's violations.

44. **Typicality.** Plaintiff's claims are typical of the claims of the proposed Class. Plaintiff and all Class members have suffered the same or similar injuries arising from Defendant's uniform failure to maintain an accessible website. Plaintiff's interests are aligned with, and not antagonistic to, those of absent Class members.

45. **Adequacy.** Plaintiff will fairly and adequately protect the interests of the Class. Plaintiff is represented by counsel experienced in ADA Title III accessibility litigation and class action proceedings. Plaintiff has no interests that conflict with those of the Class.

46. Rule 23(b)(2). Class certification is appropriate under Fed. R. Civ. P. 23(b)(2) because Defendant has acted or refused to act on grounds generally applicable to the Class, making final injunctive relief or corresponding declaratory relief appropriate with respect to the Class as a whole.

47. Rule 23(b)(3). Class certification is also appropriate under Fed. R. Civ. P. 23(b)(3) because questions of law or fact common to Class members predominate over any questions affecting only individual members, and a class action is superior to other available methods for the fair and efficient adjudication of this controversy.

**STANDING UNDER THE ADA AND THE SECOND CIRCUIT'S HOLDING IN CALCANO AND ITS PROGENY**

48. To establish standing under Article III and under Title III of the ADA, a plaintiff must demonstrate: (1) a past injury—i.e., the plaintiff personally encountered barriers to access on the defendant's website; (2) that such injury is fairly traceable to the defendant's conduct; and (3) that the injury is redressable by a favorable decision. In ADA Title III website cases, a plaintiff seeking injunctive relief must also establish a threat of future injury—that is, a real and immediate risk that the plaintiff will be harmed again by the same barriers if they return to the website. See *Lujan v. Defenders of Wildlife,* 504 U.S. 555 (1992); *City of Los Angeles v. Lyons,* 461 U.S. 95 (1983).

49. In *Calcano v. Swarovski N. Am. Ltd.*, 36 F.4th 68 (2d Cir. 2022), the Second Circuit affirmed the dismissal of certain ADA claims by visually impaired plaintiffs where the complaints contained only conclusory allegations of intent to return and failed to plead specific, particularized facts demonstrating a genuine desire to return to the defendant's stores or website. The Court held that vague, boilerplate allegations of intent to return—untethered to specific facts about the plaintiff's actual interest in the defendant's goods, services, or location—were insufficient to confer standing for prospective injunctive relief.

50. This Complaint has been specifically drafted to satisfy and exceed the standards articulated in *Calcano* and its progeny. Unlike the plaintiffs in Calcano, Ms. Kramer's intent to return to www.buttercloth.com is grounded in specific, concrete, and individualized facts. Ms. Kramer has identified by name the specific products she intends to purchase upon remediation—the Dynasty Long Sleeve Dress Shirt and the Paradigm Icy Cotton® Short Sleeve Shirt—and has articulated the specific reasons for her desire to purchase each product: as gifts for her adult son and nephew, respectively, for whom she

regularly purchases clothing. Ms. Kramer's intent is not hypothetical, speculative, or manufactured; it is the direct continuation of the specific purchasing intent she brought to the Website during her prior visits, which was frustrated solely by Defendant's accessibility failures.

51. Furthermore, Ms. Kramer's intent to return to Buttercloth's Website specifically—rather than to any other online retailer—is grounded in the concrete fact that Buttercloth sells a unique product line (patented, premium comfort-focused men's dress shirts) that is not widely available through accessible third-party retailers with equivalent product detail, sizing, and service features. Ms. Kramer learned about Buttercloth's products through widely circulated media about the company's Shark Tank appearance and its reputation for exceptional quality, and she made a deliberate and specific choice to shop at www.buttercloth.com because she believed its shirts would be ideal gifts for the particular family members she intended to shop for. This is not the case of a serial plaintiff who visited the Website with no real purchasing intent; it is the case of a genuine consumer who was shut out of an online store by barriers that no sighted user would face.

52. Ms. Kramer has suffered a past injury—her inability to independently complete intended purchases of specific, identified products due to documented, systemic accessibility barriers on www.buttercloth.com—and faces a real and immediate threat of future harm, given her specifically articulated intent to return to the Website once it is made accessible and the ongoing, site-wide nature of the accessibility deficiencies documented in the SortSite reports. Her injuries are directly traceable to Defendant's failure to maintain an accessible website, and they are fully redressable through the injunctive relief requested herein. Accordingly, Ms. Kramer has standing to bring this action under Title III of the

ADA and the Second Circuit's controlling authority.

**FIRST CAUSE OF ACTION**
**(Violations of the ADA, 42 U.S.C. § 12182 et seq.)**

53. Plaintiff, BETH KRAMER, on behalf of herself and the Class Members, repeats and realleges every allegation of the preceding paragraphs as if fully set forth herein.

54. Section 302(a) of Title III of the ADA, 42 U.S.C. § 12101 et seq., provides:

> No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation.

42 U.S.C. § 12182(a).

55. Defendant's Website, www.buttercloth.com, is offered to the general public as Defendant's primary and, upon information and belief, exclusive retail channel. As such, it must be equally accessible to all potential consumers, including those who are blind or visually impaired.

56. Under Section 302(b)(1) of Title III of the ADA, it is unlawful discrimination to deny individuals with disabilities the opportunity to participate in or benefit from the products, services, facilities, privileges, advantages, or accommodations of an entity. 42 U.S.C. § 12182(b)(1)(A)(i).

57. Under Section 302(b)(2) of Title III of the ADA, unlawful discrimination also includes, inter alia:

> [A] failure to make reasonable modifications in policies, practices, or procedures,

> when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages or accommodations; [and] a failure to take such steps as may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services, unless the entity can demonstrate that taking such steps would fundamentally alter the nature of the good, service, facility, privilege, advantage, or accommodation being offered or would result in an undue burden.

*42 U.S.C. § 12182(b)(2)(A)(ii)-(iii).*

58. The acts alleged herein constitute violations of Title III of the ADA and the regulations promulgated thereunder. Plaintiff, who is a member of a protected class of persons under the ADA, has a physical disability that substantially limits her major life activity of sight within the meaning of 42 U.S.C. §§ 12102(1)(A)-(2)(A). Furthermore, Plaintiff has been denied full and equal access to the Website, has not been provided services that are provided to other patrons who are not disabled, and has been provided services that are inferior to the services provided to non-disabled persons. Defendant has failed to take any prompt and equitable steps to remedy the discriminatory conduct, and the violations are ongoing.

59. Under 42 U.S.C. § 12188 and the remedies, procedures, and rights set forth and incorporated therein, Plaintiff requests relief as set forth within the section Prayer For Relief below.

## SECOND CAUSE OF ACTION
## (Violation of the New York State Human Rights Law)

60. Plaintiff BETH KRAMER, on behalf of herself and the Class and New York Subclass Members, repeats and realleges every allegation of the preceding paragraphs as if fully set forth herein.

61. At all times relevant to this action, the New York State Human Rights Law ("NYSHRL"), Article 15 of the New York Executive Law §§ 290 et seq., covers the actions of Defendant. Plaintiff, at all times relevant to this action, as a result of her severe visual impairment and legal blindness, has a substantial impairment to a major life activity and is an individual with a disability under Article 15 of N.Y. Executive Law § 292(21).

62. Defendant, at all relevant times to this action, owns and operates a place of public accommodation—the Website, www.buttercloth.com—within the meaning of Article 15 of N.Y. Executive Law § 292(9). Defendant is a "person" within the meaning of Article 15 of N.Y. Executive Law § 292(1).

63. Plaintiff has visited the Website on multiple occasions and has encountered barriers to access on each occasion.

64. Under Article 15 N.Y. Executive Law § 296(2)(a), "it shall be an unlawful discriminatory practice for any person, being the owner, lessee, proprietor, manager, superintendent, agent or employee of any place of public accommodation... because of the... disability of any person, directly or indirectly, to refuse, withhold from or deny to such person any of the accommodations, advantages, facilities or privileges thereof."

65. Discrimination includes the refusal to adopt and implement reasonable modifications in policies, practices, or procedures when they are necessary to afford

facilities, privileges, advantages, or accommodations to individuals with disabilities. Article 15 of N.Y. Executive Law § 296(2)(a), § 296(2)(c)(i).

66. Defendant's actions violate Article 15 of N.Y. Exec. Law § 296(2)(a) by discriminating against the Plaintiff and Subclass by: (i) owning and operating a website that is inaccessible to disabled individuals who are sight-impaired and cannot discern the content thereof without the use of a screen-reading program; (ii) by not removing access barriers to its Website in order to make accessibility features of the Website known to disabled individuals who are sight-impaired; and (iii) by refusing to modify the Website when such modifications are necessary to afford facilities, privileges, advantages, or accommodations to individuals with disabilities. This inaccessibility denies disabled individuals who are sight-impaired full and equal access to the facilities, goods, and services that Defendant makes available to individuals who are not disabled. Article 15 of N.Y. Exec. Law § 296(2)(c).

67. Defendant's discriminatory practice also includes "a refusal to take such steps as may be necessary to ensure that no individual with a disability is excluded or denied services because of the absence of auxiliary aids and services, unless such person can demonstrate that taking such steps would fundamentally alter the nature of the facility, privilege, advantage or accommodation being offered or would result in an undue burden." Article 15 of N.Y. Exec. Law § 296(2)(c).

68. Established guidelines exist for making websites accessible to disabled individuals. The International Website Standards Organization, the Worldwide Consortium, known throughout the world as "W3C," has published version 2.1 of the Web Content Accessibility Guidelines ("WCAG 2.1"). WCAG 2.1 is a well-established guideline for

making websites accessible to blind and visually impaired people. These guidelines are universally followed by most large business entities and government agencies to ensure websites are accessible.

69. Defendant has intentionally and willfully discriminated against Plaintiff and the Subclass in violation of the New York State Human Rights Law, Article 15 of N.Y. Exec. Law § 296(2), and the discrimination continues to date.

70. Absent injunctive relief, Defendant's discrimination will continue against Plaintiff and the Subclass, causing irreparable harm.

71. Plaintiff and the Subclass are therefore entitled to compensatory damages, civil penalties, and fines for every discriminatory act, in addition to reasonable attorney fees and costs and disbursements of this action. Article 15 of N.Y. Exec. Law §§ 297(9), 297(4)(c) et seq.

**THIRD CAUSE OF ACTION**
**(Violation of New York State Civil Rights Law ("NYCRL"))**

72. Plaintiff, BETH KRAMER, on behalf of herself and the New York City Subclass Members, repeats and realleges every allegation of the preceding paragraphs as if fully set forth herein.

73. Plaintiff served notice thereof upon the New York State Attorney General, as required by N.Y. Civil Rights Law § 41. (Exhibit B) (Notice to Attorney General.)

74. Persons within New York State are entitled to full and equal accommodations, advantages, facilities, and privileges of places of public accommodation, resort, or amusement, subject only to the conditions and limitations established by law and applicable alike to all persons. No person, being the owner of a place of public accommodation, shall directly or indirectly refuse, withhold from, or deny to any person

any of the accommodations, advantages, facilities, and privileges thereof. N.Y. Civ. Rights Law § 40.

75. No person because of disability, as defined in § 292(21) of the Executive Law, shall be subjected to any discrimination in his or her civil rights by any person or by any firm, corporation, or institution, or by the state or any agency or subdivision. N.Y. Civ. Rights Law ("NYCRL") § 40-c.

76. Section 292 of Article 15 of the N.Y. Executive Law deems a disability a physical, mental, or medical impairment resulting from anatomical, physiological, genetic, or neurological conditions that prevent the exercise of a normal bodily function. As such, Ms. Kramer is disabled under the N.Y. Civil Rights Law.

77. Defendant discriminates against Plaintiff and the Subclass under NYCRL § 40 as Defendant's Website is a place of public accommodation that does not provide full and equal accommodation, advantages, facilities, and privileges to all persons and discriminates against disabled individuals who are sight-impaired.

78. Defendant intentionally and willfully failed to remove the barriers on its Website, discriminating against Plaintiff and the Subclass and preventing access in violation of NYCRL § 40.

79. Defendant has failed to take any steps to halt and correct its discriminatory conduct and continues to discriminate against Plaintiff and the Subclass members.

80. Under N.Y. Civil Rights Law § 41, "a corporation which violates any of the provisions of §§ 40, 40-a, 40-b or 42 shall be liable for a penalty of not less than one hundred dollars nor more than five hundred dollars, to be recovered by the person

aggrieved thereby... in any court of competent jurisdiction in the county in which the plaintiff or defendants shall reside."

81. Plaintiff and the SubClass hereby demand compensatory damages of five hundred dollars ($500.00) for Defendant's acts of discrimination, including civil penalties and fines under N.Y. Civil Rights Law § 40 et seq.

**FOURTH CAUSE OF ACTION**
**(Violations of the New York City Human Rights Law ("NYCHRL"))**

82. Plaintiff, BETH KRAMER, on behalf of herself and the New York City Sub-Class Members, repeats and realleges every allegation of the preceding paragraphs as if fully set forth herein.

83. N.Y.C. Administrative Code § 8-107(4)(a) provides that "It shall be an unlawful discriminatory practice for any person who is the owner, franchisor, franchisee, lessor, lessee, proprietor, manager, superintendent, agent or employee of any place or provider of public accommodation: [b]ecause of any person's . . . disability . . . directly or indirectly: [t]o refuse, withhold from or deny to such person the full and equal enjoyment, on equal terms and conditions, of any of the accommodations, advantages, services, facilities or privileges of the place or provider of public accommodation."

84. Defendant is subject to the NYCHRL because it owns and operates the Website www.buttercloth.com, making it a "person" within the meaning of N.Y.C. Admin. Code § 8-102(1).

85. Defendant violates N.Y.C. Administrative Code § 8-107(4)(a) in refusing to update or remove access barriers to its Website, causing the Website and the services integrated therein to be completely inaccessible to the blind. This inaccessibility denies blind

patrons full and equal access to the facilities, products, and services that Defendant makes available to the non-disabled public.

86. Defendant is required to "make reasonable accommodation to the needs of persons with disabilities . . . any person prohibited by the provisions of [§ 8-107 et seq.] from discriminating based on disability [must] provide a reasonable accommodation to enable a person with a disability to . . . enjoy the right or rights in question provided that the disability is known or should have been known by the covered entity." N.Y.C. Admin. Code § 8-107(15)(a).

87. Defendant's actions constitute willful intentional discrimination against the Sub-Class based on disability in violation of N.Y.C. Administrative Code § 8-107(4)(a) and § 8-107(15)(a), in that Defendant has:

a. Constructed and maintained a Website that is inaccessible to blind class members

with knowledge of the discrimination; and/or

b. Constructed and maintained a Website that is sufficiently intuitive and/or obvious

as to be inaccessible to blind class members; and/or

c. Failed to take actions to correct these access barriers in the face of substantial

harm and discrimination to blind class members.

88. Defendant has failed to take any prompt and equitable steps to remedy the discriminatory conduct, and these violations are ongoing.

89. As such, Defendant discriminates and will continue in the future to discriminate against Plaintiff and other members of the proposed class and subclasses based on

disability in the full and equal enjoyment of the products, services, facilities, privileges, advantages, accommodations and/or opportunities of the Website under N.Y.C. Administrative Code § 8-107(4)(a). Unless the Court enjoins Defendant from continuing to engage in these unlawful practices, Plaintiff and members of the Class will continue to suffer irreparable harm.

90. Defendant's actions violate the NYCHRL, and therefore Plaintiff invokes the right to injunctive relief to remedy the discrimination.

91. Plaintiff is also entitled to compensatory damages, as well as civil penalties and fines under N.Y.C. Administrative Code § 8-120(8) and § 8-126(a) for each offense, as well as punitive damages pursuant to § 8-502.

92. Plaintiff is also entitled to reasonable attorneys' fees and costs.

93. Under N.Y.C. Administrative Code § 8-120 and § 8-126 and the remedies, procedures, and rights set forth and incorporated therein, Plaintiff prays for judgment as set forth below.

**FIFTH CAUSE OF ACTION**
**(Declaratory Relief)**

94. Plaintiff, BETH KRAMER, on behalf of herself and the Class and New York City Sub-Class Members, repeats and realleges every allegation of the preceding paragraphs as if fully set forth herein.

95. An actual controversy has arisen and now exists between the parties in that Plaintiff contends, and is informed and believes that Defendant denies, that the Website contains access barriers denying blind customers the full and equal access to the products, services, and facilities of the Website, which Defendant owns, operates, and controls, and fails to comply with applicable laws including, but not limited to, Title III of the

Americans with Disabilities Act, 42 U.S.C. §§ 12182, et seq., and N.Y.C. Admin. Code § 8-107, et seq., prohibiting discrimination against the blind.

96. A judicial declaration is necessary and appropriate at this time so that each of the parties may know its respective rights and duties and act accordingly.

## PRAYER FOR RELIEF

**WHEREFORE, Plaintiff respectfully requests that this Court grant the following relief:**

a. A preliminary and permanent injunction to prohibit Defendant from violating the Americans

with Disabilities Act, 42 U.S.C. §§ 12182, et seq.; N.Y.C. Administrative Code § 8-107, et seq.; and the laws of New York;

b. A preliminary and permanent injunction requiring Defendant to take all steps necessary to make the Website fully compliant with the requirements set forth in the ADA and the implementing regulations, so that the Website is readily accessible to and usable by blind individuals, including full compliance with WCAG 2.1 Level A and AA standards;

c. A declaration that Defendant owns, maintains, and/or operates the Website in a manner that discriminates against the blind and which fails to provide access for persons with disabilities as required by the Americans with Disabilities Act, 42 U.S.C. §§ 12182, et seq.; N.Y.C. Administrative Code § 8-107, et seq.; and the laws of New York;

d. An order certifying the Class and Sub-Classes under Fed. R. Civ. P. 23(a) & (b)(2) and/or (b)(3), appointing Plaintiff as Class Representative, and Plaintiff's attorneys as Class Counsel;

e. Compensatory damages in an amount to be determined by proof, including all applicable statutory and punitive damages and fines, to Plaintiff and the proposed class and subclasses for violations of civil rights under the New York City Human Rights Law, the New York State Human Rights Law, and the New York State Civil Rights Law;

f. Pre-judgment and post-judgment interest;

g. An award of costs and expenses of this action together with reasonable attorneys' and expert fees; and

h. Such other and further relief as this Court deems just and proper.

**DEMAND FOR TRIAL BY JURY**

Pursuant to Fed. R. Civ. P. 38(b), Plaintiff demands a trial by jury on all questions of fact the Complaint raises.

Dated: New York, New York
June 16, 2026

JOSEPH & NORINSBERG LLC
By: *_/s/ Robert L. Schonfeld_*
ROBERT L. SCHONFELD, ESQ.
Attorneys for Plaintiff
825 Third Avenue, Suite 2100
New York, New York 10022
(212) 227-5700
rschonfeld@employeejustice.com